UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                          Chapter 11

Shaker Gardens, Inc.                                            Case No. 111-45116 (CEC)

                        Debtor.                         <u>Jointly Administered</u>
---------------------------------------------------------------x

## **<u>DEBTOR'S PLAN OF REORGANIZATION</u>**

Shaker Gardens, Inc. (the "Debtor") hereby proposes the following plan of reorganization (the "Plan") pursuant to title 11 of the United States Code (the "Bankruptcy Code").

## Article I

## <u>DEFINITIONS</u>

For the purposes of the Plan, the following terms shall have the meanings set forth below.

**1.1.** **"Administrative Expense Claim"** means the costs and expenses of administering the Chapter 11 case allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, as approved by the Bankruptcy Court, including: the final compensation for legal services rendered to the Debtor and the Debtor's estate as awarded by the Bankruptcy Court.

**1.2.** **"Auction"** means the Auction for the sale of the Property to be held after the Confirmation Hearing Date at the offices of Goldberg Weprin Finkel Goldstein LLP.

1.3. **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York.

1.4. **"Bar Date"** means the deadline to be set by Order of the Bankruptcy Court for Creditors to file a proof of Claim.

1.5. **"Bid Procedures"** means those procedures approved by the Bankruptcy Court in the Disclosure Statement Approval Order which will govern the conduct of the Auction, the qualification of bidders to bid at the Auction and other matters related thereto.

1.6. **"Carver"** means the means Carver Federal Saving Bank, the Secured Creditor of the Debtor.

1.7. **"Carver Mortgage"** means, collectively, the Mortgage and Security Agreement executed by the Debtor and Carver on or about March 1, 2007.

1.8. **Carver Note"** means the Note in the original amount of $6,080,000 executed by the Debtor and Carver on or about March 1, 2007.

1.9. **"Carver Secured Claim"** means the Claim held by Carver against the Debtor which is hereby deemed allowed in the amount of $7,335,755; that being the principal amount due as of the initial default on April 1, 2008 ($6,006,070.30), together with interest at the contract rate of 6.575% from that date to the date of this Plan.

1.10. **"Claim"** means a claim as defined by 11 U.S.C. § 101(5) filed with the Bankruptcy Court, or which was scheduled by the Debtor without being designated as contingent, unliquidated or disputed (a) as to which no objection has been filed or (b) as

to which an objection has been filed that has been subsequently settled, withdrawn or denied.

**1.11.** "**Closing**" means the closing of the sale of the Property to Carver or a Successful Bidder at which time a deed to the Property will be conveyed in accordance with the Confirmation Order

**1.12.** "**Closing Date**" means the date on which the Closing takes place

**1.13.** "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

**1.14.** "**Confirmation Fund**" means a fund to be negotiated with Carver in to address the administration and priority claims. The Confirmation Fund shall be maintained in a separate escrow account by the Disbursing Agent

**1.15.** "**Confirmation Order**" means the Order of the Bankruptcy Court approving and confirming the Plan pursuant to Bankruptcy Code § 1129.

**1.16.** "**Credit Bid**" means a bid by Carver to acquire the Property based on the allowed amount of the Carver Secured Claim without tendering a cash payment.

**1.17.** "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP as the representative of the Debtor's estate for purposes of effectuating distributions hereunder.

**1.18.** "**Disputed Claim**" means any Claim as to which the Debtor has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any Claim otherwise disputed by the Debtor.

**1.19.** "**Effective Date**" means fourteen (14) days after the Closing Date.

1.20. **"Final Order"** means, as applicable, an order or judgment entered by the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which, prior to the expiration of fourteen (14) days (unless the Bankruptcy Court orders otherwise) from the date of entry thereof, has not been revised, stayed, modified or amended, and irrespective of whether a timely appeal has been taken, if no stay of the order has been issued then such order shall be deemed final including for confirmation and the Effective Date.

1.21. **"Government Unit"** means any department or division of the federal or state government, or the City of New York.

1.22. **"Petition Date"** means June 13, 2011.

1.23. **"Property"** means the Debtor's real property located at 76 Shaker Heights Drive, Monticello, NY, improved by a 176 unit garden apartment complex.

1.24. **Successful Bidder"** means that person or entity, if any, who bids more than Carver at the Auction sale, whose bid is accepted as the highest and best offer, and who otherwise funds the Confirmation Fund, and pays all outstanding real estate taxes, water charges and accrued interest in full, in accordance with this Plan.

1.25. **"Transfer Taxes"** means any and all stamp, transfer, deed taxes or similar taxes imposed by the City and State of New York on the transfer and conveyance of real property.

1.26. **"Unsecured Claim"** shall mean a general unsecured claim arising prior to the Petition Date not entitled to priority under the Bankruptcy Code.

**Article II**

## OVERVIEW OF PLAN

The Plan contemplates and provides for sale of the Property pursuant to an Auction process to be conducted following confirmation. At the Auction, Carver shall be permitted to Credit Bid up to the total amount of the Carver Secured Claim. It is hoped that there will be competitive bidding for the Property. To this end, the Debtor will market the Property and seek other qualified bids. To the extent Carver chooses to do so, it may participate in such marketing. If the Property is sold to a qualified bidder other than Carver, then, once Carver has been paid the full amount of its Secured Claim, 100% of the purchase price in excess of the Carver Secured Claim will be paid into the Confirmation Fund for distribution to creditors. At a minimum, however, a Confirmation Fund shall be established in an amount to be negotiated with Carver.

Carver, or the Successful Bidder at the Auction, will purchase the Property subject to all allowed secured claims of Governmental Units, which claims shall be paid in full, with interest at the applicable statutory rates, at the closing on the sale; except that Carver shall have the option to pay these claims, with interest at the applicable statutory rates, in equal monthly installments over sixty (60) months, as permitted by Section 1129(a)(9) of the Bankruptcy Code.

### Article III

### CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims shall be bound by the provisions of this Plan and are hereby classified as follows:

3.1     Quarterly fees required to be paid of the United States Trustee under 28 U.S.C. § 1930 are not classified, but will be paid in full as provided below.

3.2     All Administrative Expense Claims, consisting of professional fees and possible real estate taxes, are not classified, but will be paid in full as provided below.

3.3     **Class 1** – The Carver Secured Claim.

3.4     **Class 2** – All Secured claims of Governmental Units, including the IRS, the State of New York and the City of New York, and their agencies.

3.5     **Class 3** – All Priority claims of Governmental Units, including the IRS, the State of New York and the City of New York, and their agencies.

3.6     **Class 4** – All claims of any remaining general unsecured creditors not entitled to priority in bankruptcy, if any.

3.7     **Class 5** – The equity interests of Yehuda Nelkenbaum.

**Article IV**

**TREATMENT OF CLAIMS**

**Non-Impaired Claims**

Since Carver has a receiver in place and has full possession and control of all of the Debtor's rental income, Carver shall deposit an agreed upon amount to create the Confirmation Fund for payment to unclassified and Class 3 claims under the terms herein.

4.1     The unclassified quarterly fees owed to the U.S. Trustee will be paid in full from the Confirmation Fund pending entry of a final decree closing the Chapter 11 case.

4.2     Administrative Expense Claims are likewise unclassified. The professional fees and expenses of Goldberg Weprin Finkel Goldstein LLP, as the

Debtor's counsel, remain subject to Bankruptcy Court approval after the filing of appropriate applications for allowance on notice to creditors and other parties-in-interest. All professional fees and expenses shall be paid from the Confirmation Fund as and when approved by the Bankruptcy Court.

    4.3    To the extent that there are unpaid post-petition real estate taxes, those taxes will be paid at the closing by Carver or the Successful Bidder. Carver shall be entitled to be reimbursed by the Successful Bidder for any post-petition real estate taxes which Carver paid on behalf of the Debtor.

    4.4    **Class 2** - The allowed Secured claims of Governmental Units, shall be paid in full, with interest at the applicable statutory rates, at the closing on the sale, except that Carver shall have the option to elect to pay all Class 2 Claims in full, with interest at the applicable statutory rates, in equal monthly installments over sixty (60) months, as permitted by Section 1129(a)(9) of the Bankruptcy Code. Government Units shall retain all liens on account of Secured Class 2 Claims in the same priority and to the same extent as such liens held as of the Petition Date, until such time as the Secured Claims of the Governmental Units are paid in full, with all applicable interest.

    4.5    **Class 3** – Priority claims of Governmental Units. These claims shall be paid in full from the monies remaining in the Confirmation Fund after payment to unclassified administrative expenses. Priority claims have been filed substantially in excess of the amount of the Confirmation Fund, but the Debtor does not believe these claims are valid, and intends to object to them.

## Impaired Claims and Interests

4.6    **Class 1** - Impaired claims and interests are those claims whose contractual and legal rights are altered or modified by the Plan, making them eligible to vote on the Plan. In this case, the primary impaired class is comprised of the Carver Secured Claim which is classified separately in Class 1 and treated as follows:

a.    Pursuant to Section 363(k) of the Bankruptcy Code, Carver shall be permitted to Credit Bid for the Property at the Auction up to the full amount of the Carver Secured Claim. In the event Carver is the highest bidder at the Auction, and in furtherance of the Plan, Carver shall receive a deed to the Property, transferring title and ownership to Carver or its designee, free and clear of all other liens, claims, taxes and interests pursuant to Sections 363(b) and (f) of the Bankruptcy Code.

b.    In the event of a Successful Bidder, (i) Carver will be reimbursed for the monies deposited into the Confirmation Fund; and (ii) Carver shall be paid up to the full amount of the Carver Secured Claim from the net proceeds of sale (after satisfaction of any broker's commission and other closing costs) with the balance of any proceeds to be deposited into the Confirmation Fund for distributions hereunder.

c.    Based upon the Auction procedures and pursuant to the Court order, upon the Closing Date, Carver shall be deemed to have waived any deficiency claim which it might otherwise have against the Debtor or the Debtor's estate.

4.6    **Class 4** – The other impaired class of claims is the claims of Class 4 general unsecured non-insider creditors. In the unlikely event that funds remain from the Auction after payment of all unclassified and Class 1, 2 and 3 claims, those funds shall be

used to make a one-time pro rata distribution to non-insider non-priority unsecured creditors. It is, however, not anticipated that any monies will be available to pay a dividend to Class 4 creditors.

4.7    **Class 5** - The Allowed Class 5 Equity Interest held by Yehuda Nelkenbaum shall not receive any distribution unless, in the most unlikely event, a surplus arises from the sale of the Debtor's Property after payment of all claims hereunder in full, with interest. It is contemplated that the Debtor will be dissolved some time after completion of the sale of the Property.

### Article IV

### IMPLEMENTATION OF THE PLAN

5.1    **The Sale.** The Property shall be sold at the Auction to either Carver pursuant to a Credit Bid or to the Successful Bidder. The sale shall be free and clear of all liens and encumbrances, except that Governmental Units shall retain all liens in the same priority and extent as such liens held as of the Petition Date, until such time as the secured claims of the Governmental Units are paid in full, with all applicable interest, in consummation of the terms of this Plan.

(a)    If Carver's credit bid is accepted, the Property shall be conveyed to Carver or its designee at the Closing in full satisfaction of all claims (secured and unsecured) held by Carver against the Debtor.

(b)    In the event of a Successful Bidder, the Successful Bidder shall, at Closing, pay the purchase price by wire transfer of immediately available U.S. funds to the Disbursing Agent, and the Disbursing Agent shall pay therefrom (i) the amount of

any real estate brokerage commissions as shall be due and payable in accordance herewith; (ii) Carver, up to the amount of the Carver Secured Claim, or such lesser amount as Carver may have agreed to accept of the purchase price if less than the amount of the Carver Secured Claim; and (iii) any excess to the Confirmation Fund.

(c) In the event that no qualified bids are received, no Auction shall take place and Carver shall be deemed to have credit bid the full amount of its Secured Claim without any competing bids having been made.

5.2 **Bid Procedures.** The Bid Procedures shall be as set forth in the Order approving the Disclosure Statement, but shall include the following:

(a) the Property will be sold at the Auction to be held at the offices of counsel for the Debtor, at such date and time (the "Sale Date") as shall be fixed pursuant to the provisions of the Confirmation Order, but in no event less than fifteen (15) days after the entry of the Confirmation Order;

(b) only qualified bidders shall be permitted to bid at the Auction. Carver shall be deemed a qualified bidder and all other qualified bidders shall be deemed qualified competing bidders. In order to be a qualified bidder, an entity (other than Carver) shall, on or before the Auction, submit (unless otherwise indicated) to counsel for the Debtor and counsel for Carver:

(i) an all cash written offer, without financing or due diligence contingencies, for the Property in an amount of not less than $7,400,000 (the "Initial Bid");

(ii) financial information that fairly demonstrates its ability (and sources of its ability) to close on its purchase of the Property and that demonstrates that principals of the qualified bidder have not been convicted of a felony and are not persons with whom Carver is prohibited from dealing pursuant to any anti-terrorism law or policy;

(iii) a cash deposit equal to 10% of the Initial Bid (the "Deposit");

(iv) a written consent to a Closing no later than fourteen (14) days after the Auction;

(v) a written acknowledgement that if the qualified bidder becomes the Successful Bidder, its Deposit shall be deemed to be non-refundable and shall be forfeited if it fails to close for any reason.

(c) if a qualified competing bidder does not become the Successful Bidder, its Deposit shall be promptly returned to it;

(d) Carver shall be permitted to Credit Bid all or any portion of the Carver Secured Claim;

(e) the highest Initial Bid shall be the opening bid at the Auction. All subsequent bids made at the Auction shall be in minimum increments of $50,000;

(f) at such time as it appears to the Debtor in consultation with Carver, in the exercise of their reasonable discretion, that none of the qualified bidders present at the Auction are prepared to advance the bidding, after giving fair warning, on the record, to those Entities present, the Debtor shall close the bidding on the record, and last bid of

the Entity which immediately prior to the close of the bidding shall have submitted the highest and best offer for the purchase of the Property shall be accepted.

5.3  **Transfer of Assets.**  On or after the Effective Date, the Property shall be transferred to Carver or the Successful Bidder in accordance with the Plan. In connection therewith, Carver or the Successful Bidder shall receive (a) a bargain and sale deed without covenants to the Property in form and substance reasonably acceptable to the Carver or the Successful Bidder and its title insurer (the "Deed"), executed by the Debtor to be recorded in the Register's Office; (b) together with any and all New York City and New York State real property transfer tax returns; and (c) any and all affidavits, certificates and other documents which may be usual and customary to facilitate the recording of the Deed subject to the 1146(a) exemption under the Bankruptcy Code.

5.4  **The Confirmation Order.**  The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, providing for and authorizing the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan. Pursuant to section 1146(a) of the Bankruptcy Code, as interpreted by the Supreme Court in Florida Department of Revenue v. Piccadilly Cafeterias, Inc., 128 S.Ct. 2326 (2008), the deed to be filed is made in furtherance of the Plan and therefore properly qualifies for the transfer tax exemption.

5.5  **Filing of Documents.**  Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the Bankruptcy Code, each and every state and local governmental agency

or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any lien, claim or encumbrance not expressly preserved by the Plan.

5.6    **Cooperation of Debtor.**  The Debtor, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

5.7    **Vesting of Assets.**  Except as otherwise provided in the Plan, on the Closing of the sale of the Property, title shall vest in Carver or the Successful Bidder, free and clear of all liens, claims and other non-permitted encumbrances.

5.8    **Funding.**  All payments required to be made under the Plan shall be made by the Disbursing Agent in accordance with the terms of the Plan from the Confirmation Fund.

5.9    **Post-Confirmation Management of the Debtor.**  On and after the closing on the sale contemplated under the Plan, the Debtor's operations of the Property shall cease, and the Debtor shall wind-up its affairs under the direction of Yehuda Nelkenbaum. The Debtor reserves the right to terminate and dissolve its operations in accordance with applicable law.

5.10    **Preservation of Rights of Action.**  The Debtor and the Reorganized Debtor (i.e., the Debtor following confirmation of the Plan) shall retain any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the

Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date under state or federal law, although it is not contemplated that any lawsuits will be filed prior to or after confirmation.

## Article VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1  **Disbursing Agent.**  All distributions under the Plan shall be made by the Disbursing Agent who shall not be required to give any bond or other security for the performance of its duties unless expressly ordered by the Bankruptcy Court; and, in the event that a bond is required, the Disbursing Agent shall be entitled to charge the cost of such bond or surety to the Confirmation Fund.  The Disbursing Agent shall also be responsible to file post-confirmation status reports on a timely basis in accordance with Local Rules.

6.2  **Rights and Powers of the Disbursing Agent.** The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all Distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, or deemed by necessary and appropriate to implement the Plan.

6.3  **Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court, the Debtor or the Disbursing Agent may file and serve an objection to any Unsecured Claims up to 60 days after the entry of the Confirmation Order.

6.4  **No Distribution Pending Allowance**.  Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved.

### Article VII

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1  All unexpired leases and executory contracts shall be deemed assumed as of the Closing, and nothing contained herein shall be deemed to be a rejection, default or termination of any lease in which the Debtor is a landlord, it being the intent of the Debtor that all leases with tenants shall remain in full force and effect and be undisturbed by confirmation of this Plan, and deemed assigned to Carver or the Successful Bidder, as applicable as of the Closing Date.

### Article VIII

### DISCHARGE AND RELEASES

8.1.  **Injunction**.  Except with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date (1) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor's Property; (2) the creation, perfection or enforcement of any lien or encumbrance against the Property; or (3) any Claim or Interest discharged under the Confirmation Order, the Plan or pursuant to section 1141(d)(1) of the Bankruptcy Code as against the Debtor's Property; except for those liens held by Government Units as of

the Petition Date, which shall remain in full force and effect, with a full reservation of all rights, until such liens are paid in full under the terms of this Plan.

## Article IX

## MISCELLANEOUS PROVISIONS

9.1    **Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2    **Compliance with Tax Requirements.** In connection with the Plan, the Debtor shall comply with any withholding and reporting requirements imposed by federal, or state law; provided, however, that the transfer of the Property shall not be subject to any deed and transfer taxes.

9.3    **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing and signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.4    **Request for Relief Under Section 1129(b).** If the Plan is accepted by one Class of claims, but not all impaired Classes, the Debtor may request confirmation under section 1129(b) of the Bankruptcy Code.

9.5    **Filing of Additional Documents.** The Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.6     **Section Headings.** The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.7     **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.8     **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assigns.

9.9     **Notices.** All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)     if to the Office of the United States Trustee, 271 Cadman Plaza East, Brooklyn, NY 11201, Attn: William E. Curtin, Esq.;

(b)     if to the Debtor, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, NY 10036, Attn: Kevin J. Nash, Esq.;

(c)     if to Carver, then c/o Jaspan Schlesinger, LLP, 300 Garden City Plaza, Garden City, NY 11530-3324, Attn: Antonia M. Donohue, Esq.;

(d)     if to any Creditor or Interest holder at the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such holders; or the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed;

(e)     if to any person or Entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

## Article X

## **RETENTION OF JURISDICTION**

10.1 **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order, until the bankruptcy case is actually closed, the Bankruptcy Court shall retain jurisdiction to:

(a) Ensure that the Plan and post-confirmation sale are consummated and to address any disputes that may arise in connection therewith;

(b) Oversee enforcement and rule on any disputes arising out of, the Auction or the ensuing closing;

(c) Determine, fix the distribution, treatment or status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expenses, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d) Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

(e) Decide or otherwise resolve any remaining motions, adversary proceedings, or other contested matters, that may be pending as of the Confirmation Hearing;

(f) Modify the Plan pursuant to section 1127 of the Bankruptcy Code, or to modify any contract, instrument, release or other agreement or document created in connection with the Plan or Consent Order;

(g) Remedy any defect or omission or reconcile any inconsistency in the Consent Order, the Plan, or the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized in the Bankruptcy Code;

(h) Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan; and

(i) Enter an Order and Final Decree concluding the bankruptcy case.

## Article XI

## CLOSING THE CASE

11.1 **Quarterly Fees**. All fees and charges incurred by the Debtor under section 1930 of title 28 of the United States Code ("UST Fees") shall be paid from the Confirmation Fund as well, pending entry of a final decree, with all applicable interest. All UST Fees with interest shall continue to be due until the earlier of (i) date of dismissal of the Debtor's case or (ii) date of conversion to a case under chapter 7 or (iii) the date of the entry of the final decree closing the Debtor's case.

11.2 **Closing the Case.** Upon the Substantial Consummation of the Plan, the Debtor shall expeditiously move for the entry of a final decree closing the bankruptcy case.

DATED:   New York, New York
           August 12, 2011

      **GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP**
      Attorneys for the Debtor
      1501 Broadway, 22nd Floor
      New York, New York 10036
      Tel No.: (212) 221-5700

      By:  /s/ Kevin J. Nash
            Kevin J. Nash, Esq.
            A Member of the Firm

**Shaker Gardens, Inc.**

      By:  /s/ Yehuda Nelkenbaum
            Name: Yehuda Nelkenbaum
            Title: President

H:\Jessica\word\Shaker Gardens Inc\Plan 08-11-11.DOC