UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                            Chapter 11

Shaker Gardens, Inc.                              Case No. 111-45116 (CEC)

                        Debtor.
----------------------------------------------------------x

## DISCLOSURE STATEMENT

THIS IS NOT A SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.

### SUMMARY

Shaker Gardens, Inc. (the "Debtor") has filed its Plan of Reorganization of even date (the "Plan"), with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). This Disclosure Statement for the Debtor (the "Disclosure Statement") has been found by the Bankruptcy Court to contain adequate information for use in connection with the solicitation of acceptances of the Plan pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code").

A glossary of terms frequently used in this Disclosure Statement is set forth in Article 1 of the Plan. Capitalized terms not otherwise defined in the Disclosure Statement are defined in the Plan.

The Debtor is a single asset real estate entity whose real property is the subject of a pending foreclosure sale, that was stayed by the Chapter 11 filing.

The focal point of the Plan is the proposal by the Debtor to offer its sole asset, real property located at 76 Shaker Heights Drive, Monticello, NY, improved by a 176 unit garden apartment complex, for sale to the highest bidder to generate funds from which to pay creditors, subject to the right of its secured lender, Carver Federal Savings Bank ("Carver") to credit bid its mortgage lien.

In the Debtor's opinion, the treatment of Claims under the Plan provides a greater recovery for creditors than that which is likely to be achieved under Chapter 7 of the Bankruptcy Code. This belief is borne from the fact that the value of the Debtor's Property is in doubt, making it questionable as to whether "equity" exists in the Property. Accordingly, the Debtor believes that confirmation of the Plan is in the best interests of Creditors and recommends that

you vote to accept the Plan. Among other things, the Plan contemplates a confirmation fund through which administration claims and priority claims will be addressed, although general unsecured creditors will likely not receive any distribution at all under the Plan, except in the unlikely event that the sale price for the Property is sufficient to pay all other creditors in full.

## THE DEBTOR

The Debtor is a New York corporation which was organized to acquire and operate the Property. It originally borrowed $6,080,000 from Carver on or about March 1, 2007 to acquire the Property, but then learned that the costs of operating and maintaining the Property were higher than initially projected. The Debtor defaulted on its mortgage obligations on April 1, 2008, at a time when the principal balance due to Carver was $6,006,070. Thereafter a foreclosure action was commenced, and a receiver was appointed. The Debtor has not been in possession or had access to the books and records of the company for more than one year since the receiver took over control.

## THE PLAN

The Debtor is proceeding to confirmation of a Plan predicated upon a post-confirmation auction sale of the Property. The Debtor proposes that Carver and the Debtor will solicit bids for the Property from third parties. At the auction, Carver shall be permitted to credit bid up to the total amount of an allowed claim of $7,335,755, calculated as the outstanding principal amount, together with interest at the contract rate of 6.575% from the date of the default to the date of the Plan.

It is the hope that there will be competitive bidding and the Debtor intends to try to market the Property prior to the sale. If no one else bids, or no one else is deemed a successful bidder, Carver will buy the Property through its credit bid. In the off-chance that the Property is sold for an amount greater than Carver's allowed claim, then the Debtor's estate shall be entitled to retain all surplus. The sale will be subject to secured liens of Governmental Units, including tax liens.

The Plan also contemplates that a Confirmation Fund in an amount to be negotiated with Carver will be established to pay administrative and priority claims. It is not anticipated that any funds will be recovered to make any payment to general trade creditors.

## CONFIRMATION OF THE PLAN

Pursuant to section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan, on _____, 2011 at __:__ _.m., prevailing New York time, before the Honorable Carla E. Craig, Courtroom 3529, 271 Cadman Plaza East, Brooklyn, NY 11201. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served on or before _____-, 2011 in the manner described below under "ACCEPTANCE AND CONFIRMATION -- Confirmation Hearing."

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will approve the Plan. The Debtor intends to seek Confirmation of the Plan at the Confirmation

Hearing. **The Debtor believes that the Plan satisfies all applicable requirements of section 1129(a) or section 1129(b) of the Bankruptcy Code, if necessary.**

**VOTING INSTRUCTIONS — SUMMARY**

The following discussion summarizes more detailed voting instructions set forth in the section of this Disclosure Statement entitled "VOTING INSTRUCTIONS." If you have any questions regarding the timing or manner of casting your ballot, please refer to the "VOTING INSTRUCTIONS" section of this Disclosure Statement and the instructions contained on the ballot that you received with this Disclosure Statement.

**General.** The Debtor has sent a ballot with voting instructions and a copy of this Disclosure Statement to all of the Debtor's known Creditors. Creditors should read the ballot carefully and follow the voting instructions. Creditors should only use the ballot that accompanies this Disclosure Statement.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each impaired class who actually vote on the Plan. In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if (i) the Bankruptcy Court finds that the Plan accords fair and equitable treatment, and does not discriminate unfairly, with respect to the Class rejecting it and (ii) at least one impaired class of Claims has accepted the Plan determined without considering the acceptance of any insider.

**As the preceding paragraph makes evident, a successful reorganization depends upon the receipt of a sufficient number of votes in support of the Plan. YOUR VOTE IS THEREFORE EXTREMELY IMPORTANT. Creditors should exercise their right to vote to accept or reject the Plan.**

**Voting Multiple Claims and Interests.** A single form of ballot is provided for each Class of Claims. Any Person who holds Claims in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims. However, any Person who holds more than one Claim in one particular Class will be deemed to hold only a single Claim in such Class in the aggregate amount of all Allowed Claims in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

**Deadline for Returning Ballots.** The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by counsel for the Debtor, no later than 5:00 p.m., prevailing New York Time, on _____, 2011 at the following address:

> Goldberg, Weprin, Finkel, Goldstein, LLP
> 1501 Broadway, 22nd Floor
> New York, New York 10036
> Attn: Kevin J. Nash, Esq.

**Voting Questions.** If you have any questions regarding the provisions or requirements for voting to accept the Plan or require assistance in completing your ballot, you may contact Debtor's counsel, Kevin J. Nash, Esq. at (212) 221-5700.

## NOTICE TO HOLDERS OF CLAIMS AND INTERESTS

This Disclosure Statement and the accompanying ballots are being furnished to the Debtor's known Creditors and Interest Holders pursuant to section 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the Plan Proponents' Chapter 11 plan for the Debtor. The Plan is incorporated herein by reference.

The purpose of this Disclosure Statement is to enable you, as a Creditor whose Claim is in a Class impaired under the Plan to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE PLAN PROPONENTS. PLEASE READ THIS DOCUMENT WITH CARE.**

The historical information concerning the Debtor has been prepared using certain filings made with the Bankruptcy Court. The estimates of Claims set forth herein may vary from the final amounts of Claims allowed by the Bankruptcy Court. While every effort has been made to ensure the accuracy of all such information, the information presented herein is unaudited and has not been examined, reviewed or compiled by independent public accountants.

This Disclosure Statement contains a summary of certain provisions of the Plan and the transactions contemplated thereunder, and may contain descriptions of certain other related documents. While the Debtor believes that these summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents. Reference is made to the Plan and the documents referred to herein and therein, if any, for a complete statement of the terms and provisions thereof. In the event of any inconsistency between the terms of the Plan and this Disclosure Statement, the terms of the Plan shall be controlling.

No statements or information concerning the Debtor or its assets, future business operations, results of operations or financial condition, are authorized by the Plan Proponents other than as set forth in this Disclosure Statement and the exhibits hereto (including the Plan).

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein. The delivery of this Disclosure Statement shall not create, under any circumstances, an implication that there has been no change in the facts set forth herein since the date hereof.

This Disclosure Statement is intended for the sole use of Creditors to make an informed decision about the Plan. Each holder of a Claim should review this Disclosure Statement and all exhibits hereto (including the Plan) before casting a ballot.

## RECOMMENDATION

In the Debtor's opinion, the treatment of Creditors under the Plan provides a greater recovery than is likely to be achieved in a liquidation under Chapter 7. See "ALTERNATIVES TO THE PLAN." The Debtor believes that in a Chapter 7 liquidation, unsecured creditors (including administrative expenses and priority claims) would receive no distributions because the Property lacks equity.

## EVENTS LEADING TO CHAPTER 11

As noted above, the Debtor's problems arose from the fact that operating expenses were substantially higher than anticipated. Notably, the state court appointed receiver has also been unable to operate the Property at a profit, as set forth in the documents filed by Carver in the Chapter 11 case.

The Debtor fell into arrears on its mortgage debt to Carver only one year after the mortgage was executed on March 1, 2007. A foreclosure action was commenced by Carver in Supreme Court of the State of New York, Sullivan County in 2009 (Index No. 004113/2009). As part of that action, Douglas Rosenberg of BPC Management Corp., 80 Livingston Street, Brooklyn, New York was appointed receiver (the "Receiver") in or about March, 2010.

After a judgment of foreclosure was entered on or about December 8, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 13, 2011.

## SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

Following the commencement of bankruptcy proceedings, the Court entered a scheduling Order placing this case on a fast track toward confirmation; requiring the Debtor to file a Plan by August 12, 2011, and scheduling a hearing to consider the Disclosure Statement on September 14, 2011.

Carver moved to allow the Receiver to remain in possession of the Property, or alternatively, for the appointment of an operating Chapter 11 trustee. Although the Debtor initially opposed this motion, ultimately it negotiated a resolution with Carver adjourning the hearing to September 14, 2011, when this Disclosure Statement will be submitted to the Court for approval, and continuing the Receiver in place until then.

## SUMMARY OF THE PLAN

The Plan provides for an auction sale of the Property under which Carver shall be entitled to Credit Bid up to the full amount of its allowed claim which the Debtor has fixed at $7,335,755 for the purposes of this Plan. Although this amount is less than the amount of the claim as fixed in the judgment obtained by Carver, the judgment claim is so high as to chill any possible counteroffers by third parties. By limiting Carver's credit bid, the Debtor hopes to entice third parties to make a higher bid and increase the funds available. Should an alternate bid not materialize, Carver will own the Property by virtue of its credit bid, having obtained title more

expeditiously and efficiently than would be the case if this case were dismissed and Carver was permitted to proceed with a sale in state court foreclosure action. Therefore, the Debtor is hopeful that Carver will consent to the Plan it has proposed.

## CLASSIFICATION OF CLAIMS AND INTERESTS

Article 3 of the Plan classifies the various Claims and Interests as follows:

| | |
|---|---|
| Class 1 - | Allowed Secured Claim of Carver |
| Class 2 - | Secured Claims of Governmental Units |
| Class 3 - | Priority Claims of Governmental Units |
| Class 4 - | Remaining Non-Insider General Unsecured Creditors, if any |
| Class 5 - | Equity Interests of Yehuda Nelkenbaum. |

**Non-Classified Administrative Claims.** Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor have not been classified. Administrative Claims are the costs and expenses of the administering the bankruptcy case. In this case, Administrative Claims include only professional fees and expenses incurred by the Debtor's counsel. With respect to Professionals' Fees, the Plan provides that, subject to Bankruptcy Court approval after written application, the Debtor shall pay all awarded fees owed to Goldberg Weprin Finkel Goldstein LLP from the proceeds of the Confirmation Fund.

**Non-Classified Bankruptcy Fees.** All fees and charges incurred by the Debtor under section 1930 of title 28 of the United States Code ("UST Fees") shall be paid from the Confirmation Fund as well, pending entry of a final decree, with all applicable interest. All UST Fees with interest shall continue to be due until the earlier of (i) date of dismissal of the Debtor's case or (ii) date of conversion to a case under chapter 7 or (iii) the date of the entry of the final decree closing the Debtor's case.

## IDENTIFICATION OF CLASSIFIED AND IMPAIRED CLAIMS

**Class 1 - Allowed Secured Claim of Carver** in the sum of $7,335,755.

**Class 2 – Allowed Secured Claims of Governmental Units** including the claims of Sullivan County. While it is not believed that there are any Class 2 claims, this Class is identified out of an abundance of caution, particularly as there has not yet been a bar date established for the filing of claims.

**Class 3 - – Allowed Priority Claims of Governmental Units** including the claims of the IRS, New York State and Sullivan County. Priority claims have been filed substantially in excess of the amount of the Confirmation Fund, but the Debtor does not believe these claims are valid, and intends to object to them. Prior to confirmation, the Debtor will negotiate with Carver to establish a fair and reasonable estimate of the allowed Class 3 Claims, and to provide for funding of the Confirmation Fund from which to pay these claims in full.

**Class 4 - Unsecured Claims.** Allowed claims of non-insider Unsecured Creditors arising prior to the Petition Date.

6

**Class 5 – Equity Interests.** Class 5 consists of Equity Interests in the Debtor of Yehuda Nelkenbaum.

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

        **Class 1 - Allowed Secured Claim of Carver.** Pursuant to 11 U.S.C. §363(k), Carver shall be permitted to Credit Bid for the Property up to the full amount of its allowed claim. In the event Carver is the successful bidder, Carver or its designee shall receive a deed to the Property, free and clear of all other liens, claims, taxes and interests pursuant to 11 U.S.C. §363(b) and (f). In the event that the successful bidder is an entity or person other than Carver, then Carver shall be paid, up to the full amount of the Carver Secured Claim from the net proceeds of sale (after satisfaction of any broker's commission and other closing costs) with the balance of any proceeds to be retained by the Debtor for distribution through the Confirmation Fund.

        **Class 2 –** Allowed Secured Claims of Governmental Units. In conjunction with the sale of the Property, the Secured Claims of Government Units shall be paid in full from the sale proceeds, except that if Carver credit bids, it may elect to pay the secured claims over five years, as is permitted by 11 U.S.C. § 1129(a)(9).

        **Class 3 –** Allowed Priority Claims of Governmental Units. As noted above, the Debtor believes that no Priority Claims should be allowed, and intends to file objections to any Class 3 Claims. Those claims which are allowed must be paid pursuant to Section 1129(a)(9). As these claims have no priority over Carver Secured Claim, they will not be paid as part of the sale, unless bidding is so high as to generate sufficient funds to pay the Carver Secured Claim in full and leave monies for other creditors. Therefore, the Debtor will negotiate with Carver for the funding of any Class 3 Claims that are ultimately allowed.

        **Class 4 –** The Class 4 unsecured claims will, in all likelihood, not receive any dividend under this Plan. However, the Plan does provide that in the unlikely event that competing bids are received at the Auction sale of the Property, there shall be a pro rata payment of any remaining proceeds to Class 4 creditors after payment of Administration Expenses and Class 1, 2 and 3 claims.

        **Class 5 - Equity Interests.** Based upon current estimates, it does not appear that any funds will be available to make a distribution to Equity Holders absent some unforeseen change of events.

## DISPUTED CLAIMS AND INTERESTS

        The Plan contains a mechanism for resolving disputes and objections which may be filed against certain Claims. Unless otherwise ordered by the Bankruptcy Court, the Debtor may file and serve an objection up to 60 days after the Effective Date of the Plan. The Debtor intends to file objections to all Priority claims and reserves the right to object to other claims that may be filed.

## IMPLEMENTATION OF THE PLAN VIA THE AUCTION SALE

**The Sale.** The Property shall be sold at the Auction to either Carver or to another approved bidder (hereinafter, the "Successful Bidder").

(a) If Carver is the Successful Bidder, the Property shall be conveyed to Carver or its designee at the Closing in full satisfaction of all claims (secured and undersecured) held by Carver against the Debtor.

(b) If another qualified bidder other than Carver is the Successful Bidder, the Successful Bidder shall, at Closing, pay the purchase price by wire transfer of immediately available U.S. funds to the Disbursing Agent, and the Disbursing Agent shall pay therefrom (i) the amount of any real estate brokerage commissions as shall be due and payable; and (ii) the amount of the Carver Secured Claim, or such lesser amount as Carver may have agreed to accept of the purchase price is less than the amount of the Carver Secured Claim.

The Confirmation Order shall contain appropriate provisions, consistent with section 1142(a) of the Bankruptcy Code, directing the Debtor to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property and to perform any act that is necessary for the consummation of the Plan. Pursuant to section 1146(a) of the Bankruptcy Code, the deed to Carver or a Successful Bidder shall not be subject to a payment of transfer taxes as interpreted by the Supreme Court in Florida Department of Revenue v. Piccadilly Cafeterias, Inc., 128 S.Ct. 2326 (2008).

**Bid Procedures.** The Bid Procedures shall be as set forth in the Disclosure Statement Approval Order, but shall include the following:

(a) the Property will be sold at the Auction to be conducted at the offices of Debtor's counsel, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, New York, New York 10036, at least fifteen (15) days after entry of the Confirmation Order (the "Sale Date") free and clear of all liens, taxes, claims and other non-permitted encumbrances;

(b) only qualified bidders shall be permitted to bid at the auction. Carver shall be deemed a qualified bidder. In order to be a qualified bidder, an Entity shall submit to counsel for the Debtor and counsel for Carver:

(i) an all cash written offer, without financing or due diligence contingencies, for the Property;

(ii) financial information to which fairly demonstrates its ability (and sources of its ability) to close on its purchase of the Property equal to 10% of the cash offer (the "Deposit");

(iii) a written consent to a Closing no later than fifteen (15) days after the auction;

        (iv)    a written acknowledgement that if it becomes the Successful Purchaser, its Deposit shall be deemed to be non-refundable and shall be forfeited if it fails to close for any reason.

        (c)    if a qualified competing bidder does not become the Successful Purchaser, its Deposit shall be promptly returned to it;

        (d)    Carver shall be permitted to Credit Bid all or any portion of its allowed claim and such Credit Bid shall be deemed to be a Cash bid; and

        (e)    subsequent bids made at the auction shall be in minimum increments of $50,000.

**Transfer of Property.** Following the Auction, the Property shall be transferred to Carver or successful bidder in accordance with the Plan at a closing. In connection therewith, the purchaser shall receive a bargain and sale deed without covenants in form and substance reasonably acceptable to the Debtor, the Successful Bidder and its title insurer (the "Deed"), together with any and all New York State real property transfer tax returns and any and all affidavits, certificates and other documents which may be necessary or customary to facilitate the recording of the Deed subject to the 1146(a) exemption;

**Cooperation of Debtor.** The Debtor and its authorized signatories shall, at all times, reasonably cooperate with Carver or such other Successful Bidder in closing and consummating the sale.

**Vesting of Remaining Assets.** After the closing, the Debtor shall retain the right to enforce and collect any claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date under state or federal law.

**Future Status of the Debtor.** Following Confirmation and closing, the Debtor reserves the right to terminate and dissolve its operations in accordance with applicable law.

**Execution of Documents.** The Debtor, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

**Filing of Documents.** Pursuant to sections 105, 1141(c), 1142(b) and 1146(a) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

**Disbursing Agent.** The Debtor's Chapter 11 counsel, Goldberg Weprin Finkel Goldstein LLP, shall be the Disbursing Agent to make distributions under the Plan. Pursuant to the terms

of the Plan, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. The Disbursing Agent shall also be responsible to file post-confirmation status reports on a timely basis in accordance with Local Rules.

Distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interests filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent subsequent to after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if the filing of such Proof of Claim or Proof of Interest and the Disbursing Agent has not received a written notice of a change of address. If the Distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further Distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address. The Debtor or the Disbursing Agent shall not be required to attempt to locate any holder of an Allowed Claim or Interest. Any distribution check which remains uncashed after 90 days shall be forfeited, and the funds shall revert to the Debtor.

## DISCHARGE INJUNCTION

**Injunction.**

Except with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin on and after the Confirmation Date (1) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Debtor's Property; (2) the creation, perfection or enforcement of any lien or encumbrance against the Property; or (3) any Claim or Interest discharged under the Confirmation Order, the Plan or pursuant to section 1141(d)(1) of the Bankruptcy Code as against the Debtor's Property.

## COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code. Because it is anticipated that the Property will be sold under the Plan for an amount less than the original purchase price, the Debtor does not foresee any significant tax consequences relating to potential long-term capital gains treatment to either the bankruptcy estate or the Debtor's equity holders. The Debtor has no knowledge of Carver's tax situation and understands that Caver has its own independent advisors. Accordingly, the Debtor expresses no opinion on the tax consequences of the Plan insofar as Carver is concerned.

## EFFECTIVE DATE

The Effective Date of the Plan is defined to mean fourteen days after the Closing Date on the Auction sale.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All residential leases, tenancies and other executory contracts shall be deemed assumed at the Closing, it being the intent of the Debtor that the Property shall be sold without any impact whatsoever on the existing tenants.

## MANAGEMENT OF THE DEBTOR

On and after the closing on the sale contemplated under the Plan, the Debtor's operations of the Property shall cease, and the Debtor shall wind-up its affairs under the direction of Yehuda Nelkenbaum.

## MODIFICATION AND REVOCATION OF THE PLAN

The Plan may be altered, amended or modified by the Plan Proponents, at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. Section 1127 of the Bankruptcy Code authorizes the proponent of a plan of reorganization to modify such plan at any time prior to confirmation of the plan so long as the plan, as modified, continues to meet certain technical requirements.

## RETENTION OF JURISDICTION

The Plan contains provisions providing for the retention of jurisdiction by the Bankruptcy Court to primarily enforce the Plan and implementation thereof, as well as determine all other matters pending on the date if confirmation.

## VOTING INSTRUCTIONS

A Creditor who is entitled to vote may accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "Ballot") that was sent out with this Disclosure Statement. See "VOTING INSTRUCTIONS -- Who May Vote." The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of any Ballot received by the Balloting Agent.

## DEADLINE FOR RECEIPT OF BALLOTS

The solicitation period for votes accepting or rejecting the Plan will expire at on _____, 2011 (the "Voting Deadline"). A Ballot accepting or rejecting the Plan must be received no later than that date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

## BALLOTING AGENT

All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned so as to be received by _____, 2011, to:

11

Goldberg, Weprin, Finkel, Goldstein, LLP
1501 Broadway, 22nd Floor
New York, New York 10036
Attn: Kevin J. Nash, Esq.
Fax No. 212-422-6836
KNash@GWFGLaw.com

(the "Balloting Agent"). A Creditor or Interest Holder entitled to vote who has not received a Ballot, or whose Ballot has been lost, may contact the Balloting Agent at the address indicated above, or call Kevin J. Nash, Esq. at (212) 221-5700 to receive a replacement Ballot.

## WHO MAY VOTE - IN GENERAL

Claims in Classes 1 and 4 are impaired under the Plan, are being solicited and are entitled to vote to accept or reject the Plan. Equity Interest Holders in Class 5 are not entitled to vote.

**Ballots Executed in a Representative or Fiduciary Capacity.** Ballots executed by executors, administrators, guardians, attorneys-in-fact, officers of corporations or others acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Plan Proponents, must submit proper evidence satisfactory to the Plan Proponents of their authority to so act.

**Voting Multiple Claims and Interests.** A single form of ballot is provided for each Class of Claims or Interests. Any Person who holds Claims or Interests in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims or Interests. However, any Person who holds more than one Claim or Interest in one particular Class will be deemed to hold only a single Claim or Interest in such Class in the aggregate amount of all Allowed Claims or Allowed Interests in such Class held by such Person. Thus each Person need complete only one ballot for each Class.

## PENDING OBJECTIONS

No Ballot cast with respect to any Claim or Interest which is the subject of a pending objection will be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise.

## DEFECTS OR IRREGULARITIES

ANY EXECUTED AND TIMELY FILED BALLOT WHICH DOES NOT INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO BE NEITHER AN ACCEPTANCE NOR A REJECTION OF THE PLAN. Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

The Debtor reserves the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots. Neither the Debtor, nor any other person will be under any duty to provide notification of defects or

irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification. All questions as to the validity, form, eligibility (including the time of receipt), acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances. Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

## ACCEPTANCE AND CONFIRMATION

### CONFIRMATION HEARING

The Bankruptcy Code requires that the Bankruptcy Court hold a hearing to consider confirmation of the Plan. The Confirmation Hearing is scheduled to commence on _____, **2011 at 10:00 a.m.** in the United States Bankruptcy Court, Courtroom 3529, 271 Cadman Plaza East, Brooklyn, NY 11201, One Bowling Green, New York, NY 10004, before the Honorable Carla E. Craig. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be filed and served on or before _____, **2011**. Objections must be served upon Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: Kevin J. Nash, Esq.

### REQUIREMENTS FOR CONFIRMATION

The Debtor hopes and expects are that all classes of impaired claims will consent to the Plan so that confirmation can proceed consensually under 11 U.S.C. §1129(a) without litigation or controversy. Confirmation of the Plan is important because it will provide tax exemptions upon a transfer of the Property. Therefore, the Debtor is committed to obtaining approval of the Plan. Under bankruptcy law, if a class of unsecured creditors votes against a plan, the plan may still be confirmed under 11 U.S.C. § 1129(b) so long as, among other things, at least one class must vote in favor of the Plan.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that: (i) the Plan has classified Claims in a permissible manner, (ii) the contents of the Plan comply with various technical requirements of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan, (v) the Plan is in the "best interest" of all Creditors, in that it provides a better recovery than a liquidation should a non-accepting class arise, (vi) the Plan is feasible based upon the availability of the Creditor Payment Fund, and (vii) the Plan has been accepted by the requisite number and amount of Creditors in each Class

entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

**Best Interest Test.** The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accepts the Plan or (b) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such entity would receive or if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code.

Without confirmation, no creditors would likely receive any distributions on account of their claims, because the Property would be subject to foreclosure by Carver, and there is virtually no chance of any excess monies remaining after the foreclosure sale. All appraisal evidence indicates that the Property's current value is less than or equal to Carver's allowed secured claim.

Thus, the only realistic opportunity for Secured and Priority creditors to be paid is under the Plan. Accordingly, the Debtor has concluded that the Plan provides a recovery with a present value in an amount substantially greater than a creditor would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

**Feasibility.** For the Plan to be confirmed, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor. The Debtor believes that the Plan is feasible and not reasonably likely to be followed by resort to reorganization or liquidation, as the Confirmation Fund has already been established.

**Confirmation With the Acceptance of Each Impaired Class.** The Plan may be Confirmed if each impaired Class of Claims accepts the Plan. A Class is impaired if the legal, equitable or contractual rights attaching to the Claims of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

Holders of Claims impaired by the Plan are entitled to file Ballots accepting or rejecting the Plan. The Holders of Interests, who will neither receive nor retain any property under the Plan, are deemed to reject the Plan.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of Claims of that Class. Only those Claims, the holders of which actually vote to accept or reject the Plan, are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

**Confirmation Without the Acceptance of Each Impaired Class.** In the event that all impaired classes do not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of section 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-

accepting Class. The Debtor believes that the Plan is in the best interest of all Creditors and Equity Holders and strongly recommends that all parties entitled to vote cast their ballots in favor of accepting the Plan. Nevertheless, out of an excess of caution, pursuant to the Plan, the Debtor will request that the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of section 1129(a) are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive for its Claims or Interests. The Debtor believes that under the Plan all classes of Impaired Claims and Impaired Interests are treated in a manner that is consistent with the treatment of other classes of Claims and Interests with which their legal rights are intertwined, if any, and no class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims and Allowed Interests in such class. Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule." Subject to certain exceptions, this rule, codified in section 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired Class of Claims or Interests that has not accepted the Plan must be paid in full if a more junior class receives any distribution under the Plan.

With respect to Unsecured Claims, the absolute priority rule allows the confirmation of a Plan over the rejection of a class of Unsecured Claims if the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on account of such junior claim or interest any property. In this instance, Equity Interest Holders will not receive or retain anything under the Plan, and so the absolute priority rule is satisfied.

## ALTERNATIVES TO THE PLAN

If the Plan is not confirmed by the Bankruptcy Court the alternatives may include other and less favorable disposition of the Property by Carver, in which event, other Creditors have no reasonable prospect for receiving a distribution.

## ADDITIONAL INFORMATION

      Requests for information and additional copies of this Disclosure Statement, the Ballots and the other materials delivered together herewith and all deliveries, correspondence and questions, as the case may be, relating to the Plan should be directed to the Debtor's counsel, Goldberg Weprin Finkel Goldstein, LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: Kevin J. Nash, Esq. at (212) 221-5700 (ii)

DATED:    New York, New York
               August 12, 2011

                                   GOLDBERG WEPRIN FINKEL
                                   GOLDSTEIN LLP
                                   Attorneys for the Debtor
                                   1501 Broadway, 22nd Floor
                                   New York, New York 10036
                                   Tel No.: (212) 221-5700

                                   By:    /s/ Kevin J. Nash
                                                Kevin J. Nash, Esq.
                                                A Member of the Firm

                                   Debtor
                                   **SHAKER GARDENS, INC.**

                                   By:    /s/Yehuda Nelkenbaum
                                                Title: President

H:\Jessica\word\Shaker Gardens Inc\Disclosure Statement 08-12-11.DOC